N. W. RINDGE *v.* CHARLES GREEN ; HENRY W. BOWMAN AND ANOTHER, TRUSTEES ; AND CLARENCE GREEN AND OTHERS, CLAIMANTS.

*Waiver.* *Residence for the Purposes of Trustee Process.* *Gen. Sts. c.* 34, *s.* 5. *Jurisdiction.*

In debt by trustee process served January 25, plaintiff's attorney, having learned that the trustees were willing to pay the fund to the persons entitled thereto, agreed to protect their rights and drew and filed for each a disclosure denying the holding of funds, and alleging that at the time of service of process and ever after, they resided not in this State, but in New Hampshire, and that they then and ever afterwards had no authorized agent in this State. Afterwards, at their request, he drew and filed their joint disclosure whereby they disclosed that in November they bargained with defendant for timber on land in this State, and that they then went into camp thereon and lived there in getting the timber till March, and that the funds in their hands were claimed by others than defendant. Plaintiff's attorney caused the claimants to be cited, and the claimants on appearing moved that the trustees be discharged for that they were non-residents; and the court discharged them. *Held,* that plaintiff, having submitted the question to hearing on the motion without objection, could not be heard to allege error in a finding that the facts were in accordance with the disclosure.

The court found the disclosure to be true. *Held,* that on those facts the trustees were not residents within the meaning of section 5, c. 34, Gen. Sts.

The trustees appeared at the first term and permitted the cause to be continued from term to term without objection. *Held,* that as, if the trustees were non-residents the court had no jurisdiction, the objection of non-residence was not personal to the trustees, and was therefore not waived, but might be made by any one having an interest in the matter in controversy, or the court might dismiss of its own motion.

DEBT on judgment brought to Windsor County Court at its May Term, 1876, by a writ served as trustee process, on January 25. The defendant and the trustees then appeared, and the cause was continued. At the next term judgment was rendered against the defendant. The cause was continued as to the trustees from

term to term.   At some time prior to the May Term, 1878, having learned that there was to be no contest between the plaintiff and the trustees, and that the trustees were willing to pay the funds in their hands to any proper party, the plaintiff's attorney agreed to protect the rights of the trustees, and accordingly drew their separate disclosures and filed them on the first day of the December Term, 1878.   Those disclosures denied the holding of funds, and alleged that at the time of service and ever after they resided not in this state, but in the state of New Hampshire, and that they then and ever afterwards had no authorized agent in this state.   Afterwards on the same day, the plaintiff's attorney, acting as the attorney of the trustees, and at their request, drew and filed their joint disclosure, which was signed by Bowman for himself and the other trustee.   The trustees thereby disclosed that in November, 1875, they bargained with the defendant for all the stumpage on certain land in Canaan and Lemington, Vermont, which the defendant then said belonged to his children, for $1 per thousand feet; that in pursuance of said contract they then went into camp on said land and continued to live there, cutting and taking off said timber, till the following March; that they took 1,244,309 feet of timber from said land, for which they had paid only in part; that the funds remaining in their hands were claimed by Clarence Green and Carrie Gould; and that they were willing to pay to the person entitled.   The trustees also thereby asked that said Clarence and Carrie be cited in.   The plaintiff's attorney then caused said Clarence and Carrie and one Loren Gould to be cited in as claimants.   The claimants, on appearing, moved that the trustees be discharged, on the ground disclosed by their first disclosures; and the court, BARRETT, J., presiding, found the facts as to residence of the trustees to be in accordance with the three disclosures, and rendered judgment on the motion that the trustees be discharged; to which the plaintiff excepted.

*J. J. Wilson*, for the plaintiff.

The defence of non-residence, if available, cannot be taken advantage of by motion to dismiss.   *Peck* v. *Barnum*, 24 Vt. 75, 84 ; Gen. Sts. c. 34, s. 19.

The trustees were resident in Vermont. To dwell permanently or for a length of time, is to reside. Web. Dict. title Residence. Bouvier says, " A residence is generally transient in its nature—it becomes a domicile when the person takes it up *animo manendi*." One may have a domicile in one state, a settlement in another, and a residence in a third. *Cambridge* v. *Charlestown*, 13 Mass. 501. And see HUTCHINSON, J., in *Boardman* v. *Bickford*, 2 Aik. 345 ; *Queen* v. *Vice Chancellor of Oxford*, 7 Q. B. Cas. 471. In construing the word, the purpose and spirit of the statute should be considered. Its only purpose was to protect travelers from the hardship of being stopped by this process on their way through the state. In the statutes of 1797 and 1817, the word inhabitant was used. The word was subsequently changed for some purpose. The intention of the trustees to return would not prevent actual residence. *Bruce's Case*, cited 33 Vt. 164.

The exemption was made for the benefit of no one but the trustee. The privilege is like that of a party or witness attending court ; and if not asserted at the first opportunity it is waived. Gen. Sts. c. 34, s. 5 ; *Peck* v. *Barnum, supra* ; *Fletcher* v. *Baxter*, 2 Aik. 224 ; *Wood* v. *Kinsman*, 5 Vt. 588 ; *Forbes* v. *Davison*, 11 Vt. 660. The claimants cannot defeat the plaintiff's attachment lien ; they are admitted to the case only " so far as respects their title to the goods." Gen. Sts. c. 34, s. 55 ; *McKenzie* v. *Ransom*, 22 Vt. 324.

*French & Southgate*, for the claimants.

When a suit is wrongly commenced by trustee process, the court has no jurisdiction. *Emerson* v. *Paine*, 9 Vt. 271, and cases *passim*. And when the court has no jurisdiction it will dismiss of its own motion. *Southwick* v. *Merrill*, 3 Vt. 320 ; *Stoughton* v. *Mott*, 13 Vt. 175 ; *Shepherd* v. *Beede*, 24 Vt. 40. The claimant is so far a party that he may protect his own interest. Gen. Sts. c. 34, s. 35.

Upon the facts disclosed, the trustees were not resident in this State so as to be subject to the trustee process. *Boardman* v. *Bickford*, 2 Aik. 345 ; *Baxter* v. *Vincent*, 6 Vt. 614. The term residence has the same meaning under the trustee law that it has

under the pauper law. *Newbury* v. *Topsham*, 7 Vt. 407; *Burlington* v. *Calais*, 1 Vt. 385; *Bristol* v. *Rutland*, 10 Vt. 574; *Kirby* v. *Waterford*, 14 Vt. 414.

The opinion of the court was delivered by

Ross, J.   I.   The plaintiff's claim that there was error in the judgment of the County Court in discharging the trustees because it deprived him of the opportunity of a trial in regard to the residence of the trustees, is not well founded.   The trustees, in their separate disclosures under oath, alleged that their residence was in New Hampshire, and not in Vermont, when served with process in suit, and ever since has been, and that they had no authorized agent in the State during that time.   The plaintiff did not traverse these allegations nor take issue upon them, but instead thereof, through his attorney, and on his agreement to protect the trustees, obtained from one of them and filed in court a further disclosure, admitting an indebtedness from them as partners which arose from a contract made by them with the defendant for the purchase of some timber standing on land in this State, but with notice from the defendant given at the time of making the contract, that the land belonged to his children; stating that they went into camp on said land in November, 1875, and continued to live there in camp until the March following, and that they were willing to pay the money thus in their hands to the persons entitled to it; and asking that the claimants might be cited in.   On being cited in the claimants moved that the trustees be discharged, because, from their disclosures, it appeared they were non-residents, and for that reason not amenable to the trustee process.   The plaintiff went to a hearing on this motion without objection, so far as appears from the exceptions.   He thereby submitted the case to the consideration and judgment of the court on what was in that behalf before it, to wit, the three sworn disclosures of the trustees. He cannot now be heard to allege error in the findings of the court that the facts stated in disclosures of the trustees in regard to their residence are true.   That was the matter which he submitted to the determination of the court by voluntarily going to hearing on the motion, without asking to be allowed to produce

further testimony on that question, and without taking issue on the allegations made in the disclosures, or claiming the right to try that question in any other manner.

II. The facts found by the court establish that the trustees were, at the time of the service of the writ on them, and still are, non-residents. Their stay in this State was temporary, and only for the accomplishment of a single purpose—the removal of the timber. To the accomplishment of that purpose they came from their residence in New Hampshire. While accomplishing it their residence remained in that State, and to it they returned when the purpose of their temporary commorancy in this State was accomplished. The words, residence or resident, import more than a temporary stay in a place for the performance of a single piece or job of work, especially when the workman at the same time has a home, a permanent place of abode, in another place. It is difficult to define in precise language what constitutes a residence, or makes one a resident of a place. It depends upon the circumstances then surrounding the person, upon the character of the work to be performed, upon whether he has a family or a home in another place, and largely upon his present intention. Hence, it will hardly do to select out one from the meanings of the word given in Webster's Dictionary, and hold that because the trustees fall within that one meaning, they therefore were residents of the State within the language of the statute. In the language of the law, residence has come to have a well-defined meaning, the home or place of abode of the individual. A logging camp has few abiding, homelike characteristics and qualities, especially as applicable to a person who is found to have a home or abode in another place. Hence, on the facts found, the trustees were and are non-residents.

III. The plaintiff claims that the County Court erred in allowing the claimants to move for the discharge of the trustees. He maintains that whether they were amenable to and would answer the process served upon them, was personal to the trustees, and could not be taken advantage of by the claimants, who are ad-

Rindge *v.* Green.

mitted as parties to the suit only so far as to try their right to the funds in the trustees' hands. If this be so, the trustees waived their right and that of everybody to object to the court's taking cognizance of the matter, by appearing by attorney and having the case continued from term to term without objection. A mere privilege personal to a party, must be insisted on at the earliest opportunity, or it is waived. The method of attaching personal property or a chose in action, in the hands of a third person, by trustee process, is wholly statutory. It did not exist at the common law, except by the custom of London, and within its territorial jurisdiction. It can therefore be used only in the cases provided for by the statute. The statute gives the right to commence actions by the use of the trustee process only in actions upon contract, express or implied. If an action of tort, or any other action not authorized by the statute, is commenced by trustee process, it has been uniformly held that the action failed, because the court had no jurisdiction over the process in the given case, and that the suit would be dismissed on plea or motion of either the principal defendant (*Ferris* v. *Ferris*, 25 Vt. 100 ; *Boardman* v. *Bickford*, 2 Aik. 345 ; *Austin* v. *Grout*, 2 Vt. 489 ; *Hill* v. *Whitney*, 16 Vt. 461 ; *Tarbell* v. *Bradley*, 27 Vt. 535), or the trustee (*Bradley* v. *Richmond*, 6 Vt. 121 ; *Emerson* v. *Paine*, 9 Vt. 271 ; *Leach* v. *Cook*, 10 Vt. 239), and either at or after the first term. *Tarbell* v. *Bradley*, 27 Vt. 535. Hence, the question raised by the motion is not one of personal privilege, to be exercised or not, to suit the pleasure of the trustee, but a question involving the jurisdiction of the court. In case of non-residents the language of the statute is pointed and explicit. "No person shall be summoned as trustee unless at the time of the service of the writ he resides in this State." The trustees not coming within this negative qualification of the statute of those against whom the process can be used, the court had no jurisdiction of the process against them. When, therefore, they came into the court and made known and established the fact that they were non-residents, and so not subject to the process, they stood before the court as though not summoned at all, and it was the duty of the court on its own motion to discharge them. When the fact of non-residence was established, and it thereby became determined

that the court had not jurisdiction over the trustees nor the debt due from them, any one having any interest in the subject sought to be brought in controversy, and especially the claimants to the fund which was attempted to be brought into adjudication by the use of an inoperative if not void process for the purpose for which it was being used, might move for the discharge of the trustees. Evidently the claimants were not called upon to adjudicate their title or right to a fund over which the court had no jurisdiction, and whose adjudication for that reason, if had, would be a mere consent adjudication, and only binding upon the parties as such. The decision of this court, much relied upon by the plaintiff in *Peck* v. *Barnum*, 24 Vt. 75, is not in conflict, but in harmony, with the views heretofore expressed. In that case the trustees were a partnership having their place of business in this State. Two of the partners resided in this State and managed the business, and the other two resided in New York. It is there held that the debt or chose in action attached by the process, is considered as localized and remaining at the residence of the debtor, and not as following the person of the debtor ; and that, inasmuch as the place of business of the partnership was in this State, and the managing partners residents of the State, and the debt could be attached by the service of a writ of summons, and that writ, under the statutes of the State, could be effectually served so as to give jurisdiction to the court where part of the joint debtors resided abroad, the case was within the provisions of the statute authorizing the use of the process. The whole discussion in that case proceeds upon the theory that if all the partners had resided abroad, and carried on their business abroad, the process would not lie. The learned judge uses this language : " In case of an individual, or joint debtors, where all have their residence in another State, they cannot be summoned as trustees, not only on the ground that they are subject to another jurisdiction, but our statute has made no provision for the service of process in such case, the 16th section of the act applying only to cases where their residence is in this State."

There was therefore no error in the judgment of the County Court discharging the trustees with costs, and that judgment is affirmed.